## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MICHELLE HAVENS and ELSIE WILKERSON, on behalf of themselves and all others similarly situated, | Case No: |
| Plaintiffs, | |
| v. | **CLASS ACTION COMPLAINT** |
| INSTANT BRANDS, INC., f/k/a DOUBLE INSIGHT INC., d/b/a INSTANT POT® COMPANY, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## CLASS ACTION COMPLAINT
## FOR BREACH OF WARRANTY AND
## VIOLATION OF CALIFORNIA AND FLORIDA
## STATUTORY CLAIMS, UNJUST ENRICHMENT, AND FRAUD

Plaintiffs Michelle Havens and Elsie Wilkerson (collectively, "Plaintiffs"), by and through their attorneys, bring this action against Instant Brands, Inc., f/k/a Double Insight Inc., d/b/a Instant Pot® Company ("Defendant" or "Instant Brands"). Plaintiffs allege the following based on personal knowledge as to their own acts and based upon the investigation conducted by their counsel as to all other allegations:

### INTRODUCTION

1.      Plaintiffs brings this class action complaint against Instant Brands for selling the Instant Pot® Electric pressure cooker products, and generally known as follows:

      a.   IP DUO Series;

      b.   Lux Series;

1

    c.   Viva Series;

    d.   Duo Plus Series;

    e.   Duo Evo Plus;

    f.   Duo Crisp;

    g.   Duo Nova;

    h.   Nova Plus;

    i.   Smart WiFi;

    j.   DUO SV;

    k.   Ultra Series; and,

    l.   Max Series.

These pressure cookers will be collectively referred to as "Instant Pot®," "Instant Pot® Product," or "Product(s)".

2.    The Product has a dangerously defective lid-locking assembly, allowing the lid to open while the contents of the cooker are under pressure during normal and expected use, so that its super-heated contents erupt from the cooker, in violation of UL Standard for Safety for Pressure Cookers, UL 136, scalding consumers with second- and third-degree burns ("the Defect").

3.    Instant Brands has been aware of this dangerous Defect since at least the year 2016, if not earlier, but fraudulently concealed it, failed to disclose it, and continued to sell Products that had the defective lid-locking assembly.

4.    By selling a dangerously defective Product, as further detailed in this Complaint, Instant Brands violated the common law of warranty and unjust enrichment, the Magnuson-Moss Warranty Act, and California and Florida consumer protection statutes.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. section 1332(d)

because members of the putative class are citizens of a state different from Defendant and the amount in controversy exceeds $5 million before interest and costs.

6.       This Court has personal jurisdiction over Defendant. Defendant's United States headquarters is in this Division of this District and Instant Brands advertises and sells the Product to prospective customers in this District. Defendant Instant Brands, Inc. distributed the Product to various retailers in the state of Illinois, including Walmart, Target, and Bed Bath and Beyond, among others, which sold the Product to consumers in the state of Illinois. Defendant also sold the Product to consumers in the state of Illinois by way of internet transactions facilitated by Amazon. Defendant Instant Brands, Inc. marketed the Product on the internet, expecting and knowing that some of those Products would be purchased by consumers in the state of Illinois.

7.       Venue is appropriate pursuant to 28 U.S.C. section 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this District. A substantial portion of the class members reside in this District.

## INTRADISTRICT VENUE

8.       Venue in this Division of the District is proper because a substantial part of the events or omissions which give rise to the claim occurred in this Division and Defendant's headquarters is in this Division of this District.

## PARTIES

### A.  Plaintiffs

9.       Plaintiff Michelle Havens resides in Bakersfield, California, and is a citizen of the state of California.

10.       Plaintiff Elsie Wilkerson resides in Lake City, Florida, and is a citizen of the state of Florida.

### B.  Defendant Instant Brands, Inc.

11. Defendant Instant Brands, Inc., formerly known as Double Insight, Inc., has its headquarters in Downers Grove, Illinois. Defendant's wrongful conduct, as alleged in this Complaint, is currently emanating primarily from Illinois and has been since 2009, if not earlier.

12. Instant Brands, Inc. and/or Double Insight, Inc. has at times held itself out as doing business as Instant Pot® Company.

13. Defendant Instant Brands, Inc. itself, or through its officers and employees, or through third parties acting at its request, was one of the designers of the Product.

14. The Product was manufactured in China by a third-party entity known as Guangdong Midea Consumer Electric Manufacturing Co Ltd., or an affiliate of that entity acting pursuant to a supply contract with Defendant, Instant Brands, Inc. The Product bears the registered trademark or brand name "Instant Pot®."

15. Defendant Instant Brands imported the Instant Pot® into the United States either directly, or by a third-party acting pursuant to contract with Defendant Instant Brands, Inc.

16. Defendant Instant Brands distributes the Instant Pot® in the United States either directly, or by a third-party acting pursuant to contract with Defendant Instant Brands, Inc.

17. Defendant, Instant Brands, Inc. itself, and/or through third parties acting pursuant to contract(s) with it, introduced the Instant Pot® into interstate commerce, into the United States generally, and Illinois in particular.

## FACTUAL ALLEGATIONS

### A. The Instant Pot®

18. At all times relevant to the issues alleged in this Complaint, Defendant Instant Brands, Inc. was engaged in the business of designing, manufacturing, importing, marketing, labeling, distributing, selling, and/or introducing into interstate commerce, the "Instant Pot®." The models here at issue are listed in Paragraph 1, above.

4

19.     Instant Brands, Inc., formerly known as Double Insight Inc., claims that it "was founded in 2009 by a team of Canadian technology veterans," including Dr. Robert Wang, who claims to be the "inventor" of the Instant Pot®.

20.     On March 9, 2010, the Word Mark "Instant Pot®" (*i.e.*, Trademark) was registered with the United States Patent and Trademark Office listing Double Insight Inc. Corporation Canada as the Owner (Registrant), Registration Number 3887207. The Instant Pot® brand is the property of Defendant Instant Brands, Inc.

21.     Instant Brands, Inc. has included the following statements on its website:

In late 2010, after eighteen grueling months of research, design and development they introduced the Instant Pot® CSG Multi-Use Programmable Pressure Cooker. . . .

Each subsequent Instant Pot® product introduction has raised the bar on functionality, user-friendliness and safety. In 2012 the company launched the Instant Pot® Lux 6-in-1 Multi-Use Programmable Pressure Cooker, 6 quart – which was the most advanced pressure cooker available on the market at the time. The Lux 6-in-1 quickly became the category best seller on Amazon, leading the company to introduce the Lux 6-in-1, 5-quart version of the product, and later the Instant Pot® Duo 7-in-1 Multi-Use Programmable Pressure Cooker.  . . .

https://instantappliances.com/about-instant-brands-inc-instant-pot (last accessed September 13, 2021).

22.     Some of the design and specifications for the Instant Pot® were provided to Guangdong Midea Consumer Electric Manufacturing Co Ltd., by or at the request or direction of Defendant, Instant Brands.

23.     The Instant Pot® was designed and manufactured with the specification that the lid cannot be opened with less than 100 pounds of rotational force, applied gradually, while the contents of the pot are under pressure.

24.     Upon information and belief, the intended safety feature of the Instant Pot®—that

the lid cannot be opened with less than 100 pounds of rotational force, applied gradually, while contents of the pot are under pressure—was not adequately tested in design and development of the product to ensure that it was reasonably safe under the conditions of reasonably expected use.

25.     Because the Product has a dangerously defective lid-locking assembly, allowing the lid to open while the contents of the cooker are under pressure during normal and expected use, so that its super-heated contents erupt from the cooker scalding consumers with second- and third-degree burns, the Products do not possess even the most basic degree of fitness for ordinary use.

26.     Upon information and belief, the Defect is substantially certain to manifest during the useful life of the Product and render the Products unmerchantable.

27.     Upon information and belief, the useful lifetime of the Products, and pressure cookers in general, can be up to ten years or more.[1]

28.     On September 27, 2013, the Instant Pot® Programmable Electric Pressure Cooker, Model IP-DUO60 Instant Pot® was issued an Underwriters Laboratories Listing, UL 9H06 E214884. The UL Listing means, in part, that when the Instant Pot® Products are under pressure the cover (or lid) should not be able to be opened by applying a rotational force of 100 pounds (445 N) or less, with the force to be applied gradually.

29.     Pursuant to a supply agreement with Defendant Instant Brands, Guangdong Midea Consumer Electric Manufacturing Co Ltd., manufactured, labelled, and packaged the Instant Pot®

---

[1] https://kitchenappliancehq.com/are-instant-pots-worth-it/ ("… I would expect your Instant Pot to last five to ten years. But I've had Crock-Pots last twice that long, so it's entirely possible Instant Pots could last that long too.") (last accessed March 3, 2022); https://kitchensnitches.com/how-long-do-instant-pots-last/ ("Normally, an Instant Pot will have no problem lasting for five years (or more) if you take good care of it") (last accessed March 3, 2022); https://mybudgetrecipes.com/how-long-should-an-instant-pot-last-before-it-needs-replacing/ ("[I]t is very common for Instant Pots to last anything from 2 – 5 years. In some cases, they can last longer if they are properly cared for….") (last accessed March 3, 2022).

pressure cooker products that are the subject of this lawsuit.

30.     Defendant Instant Brands authored and/or approved the English language information that appears on the labeling and packaging of the Instant Pot® and provided it to Guangdong Midea Consumer Electric Manufacturing Co Ltd. for use with the Instant Pot®.

31.     Defendant Instant Brands authored and/or approved the English language information that appears in the User Manual for the Instant Pot® that Defendant Instant Brand provided to Guangdong Midea Consumer Electric Manufacturing Co Ltd. to include in the packaging of the Instant Pot®.

32.     Guangdong Midea Consumer Electric Manufacturing Co Ltd. does not have the right to manufacture or deliver Instant Pot® branded products for anyone other than Instant Brands, Inc. or others whom Instant Brands may so designate.

**B.  Defendant Instant Brands' Knowledge of Defect**

 1.  **Notice from Users of Defect**

33.     By at least March 2016, Instant Brands was receiving notice from users of its Instant Pot® Products, and continued to receive notice, that the lid of the Product had opened while the contents of the cooker were under pressure, causing the super-heated contents of the Product to erupt from the pot and cause serious burn injuries to the user of the Product. These are just some of the notices:

 a.     **March 8, 2016**, from a user of a DUO60 Instant Pot® purchased from Amazon on November 27, 2015:

> Your pot malfunctioned.  I opened the lid and hot soup splashed out of the pot all over me.  I was seen in the ER and have 2nd degree burns all over my chest.

 b.     **August 24, 2016**, from a user of an Instant Pot® purchased from Amazon in July of 2016:

[T]his past Sunday, I had a traumatic encounter. I had the machine in soup mode, and it was cooking for several hours. The machine let me know when it was fine, and I opened the lid. And when I did, a forceful blast occurred. Food and steam shot out of the machine. I suffered severe second- and third-degree burns.

      c.      **September 7, 2016**, from a user of an Instant Pot® IP-DUO60 V2

purchased from Amazon on July 13, 2016:

After signaling off and beeping, when I tried to remove the lid the pressure cooker exploded contents causing 2nd and first-degree burns. Paramedics were called and transport to burn trauma unit followed.

      d.      **October 7, 2016**, from a user of an Instant Pot® DUO60 V2, manufactured

in April of 2016, purchased from Amazon on September 6, 2016:

I suffered a second degree burn on 9/13/16 from using your Instant Pot® pressure cooker. The model I have is IP-DUO60 V2. We just purchased it from Amazon on 9/6/16 and this was only my second time using it. When the accident happened, I was making ox tail soup and when I turned the lid to take it off, it popped off completely and the soup spilled all over my body. It is my understanding that the pot has a safety function where it should not open if there is still too much pressure so this should never have happened.

      e.      **January 2, 2017**, from a user of an Instant Pot® recently purchased:

[L]ast night, after cooking and decompressing for over 5 mins, when I twisted the lid it exploded off with some force. Luckily I was not hit with the lid but my hands got quite burnt from the hot liquid which splashed everywhere.

      f.      **January 5, 2017**, from a user of an Instant Pot® IP-DUO60 V2,

manufactured in September of 2016:

Isn't there supposed to be a safety feature to prevent opening the lid if pressure is built up? I've just spent the last two hours at urgent care and the pharmacy. . . . After the cycle completed and the machine beeped, I switched the vent to Venting. After that, I twisted the lid and the liquid shot out forcefully – enough to land some of the liquid in a tall container about 8 inches away from the pot.

      g.      **January 7, 2017**, from a user of an Instant Pot® IP-DUO60 V2,

manufactured in April of 2016:

I was making soup when it happened. I had put it on manual for 8 minutes. My level was to 4L, so it was below the full level. It had ended and went into the automatic [sic] steam release mode. I then went ahead and started to vent. It vented until there was really no more steam coming out and then when I went to open it the lid flew off and soup came flying out and scalded me.

h. **January 13, 2017**, from a user of an Instant Pot® DUO60 V2, manufactured in May of 2016, Serial Number 160560.50046:

The float valve was down. I released the steam through the float valve until it wasn't coming out anymore, then put it back to the closed position. Then I attempted to open it, assuming if there was pressure it wouldn't allow me to open it. It moved, so I slowly began to open it, then when it unlocked it violently erupted out of the pot and onto my hands, the floor, the cooking surface, the counter, just all over.

i. **March 8, 2017**, from a user of an Instant Pot® IP-DUO60 V2, manufactured in September of 2016, purchased from Amazon:

I used my Instant Pot® ® on Monday night to make a soup. I let the pressure release on its own and went over to check on it. I began to open the lid and the top exploded off and the contents of my pot blew out all over my kitchen, leaving first degree burns on my forearm. Plastic lids to jars were melted completely. This product is dangerous. I purchased through Amazon and am going to ask them for a refund.

j. **April 6, 2017**, from a user of an Instant Pot® IP-DUO60 V2, manufactured in November of 2016, purchased from Amazon in January of 2017:

On Tuesday 4/4/17 I cooked soup in the pot. After it was done it went to keep warm mode as usual. I let it sit as I always do. After a while I went to check the soup. I moved the release valve to make sure no steam was in the pot. I then turned the lid and the pot exploded all over the counter and my right hand and forearm.

k. **April 17, 2017**, from a user of an Instant Pot® IP-DUO60 V2, manufactured in August of 2016, Serial Number 160860.45453, purchased from Amazon:

Your product resulted in a second degree burn and multiple other burns. You claim that your Saftey [sic] Lid Lock prevents accidental opening when pressurized. However, when we opened the lid, after releasing the pressure using the release valve, it spewed boiling liquid several feet across the

kitchen and severely burned a kid, which resulted in a hospital trip. . . . The injured kid received 1st and 2nd degree burns but is healing well so far.

l.     **May 8, 2017**, from a user of an Instant Pot® DUO60:

Yesterday evening my husband was opening our Instant Pot® with chicken and approximately 4 cups of broth in it when the pot malfunctioned spewing boiling hot broth all over my husband and our kitchen. My husband sustained scald burns over a large portion of his torso and groin through his clothes and several appliances on the counter were damaged in the process. The Instant Pot® had been on manual for 14 minutes; my husband released the pressure fully and the float valve went down.

m.     **June 1, 2017**, from a user of an Instant Pot® DUO60 V2, manufactured in

February of 2017, Serial Number 170260.77799:

We got our pot not long ago, maybe 1.5 months. I have only used it three times and the pressurizing doesn't seem right. This last time, the pressure was not let out despite me following instructions and venting, and the whole pot pretty much exploded. When we opened the lid soup literally shot everywhere covering our cabinets, inside drawers, everywhere on our wooden floors. Disaster.

n.     **August 16, 2017**, from a user of an Instant Pot® DUO60 V2, manufactured

in May of 2016, Serial Number 160560.20630:

When I went to release it – major steam had already been released and I then felt it was taking too long and was probably done. There was a slight resistance but when I turned it – it opened and the broth inside splashed out.

o.     **September 13, 2017**, from a user of an Instant Pot® DUO60 V1,

manufactured in September of 2015, Serial Number 150960.03280:

The incident happened almost exactly a year ago in March 2017. I was making chicken bone broth. I used about a pound of chicken bones, lots of garlic, Instant Pot® cider vinegar, salt, and filled it with water just below where is says max. I closed the lid, sealed it, pressed Manual and set it for one hour and a couple minutes later, it beeped and showed on the screen no pressure (in fewer letters: I think it looked like this, NOPRES) It had never happened before, so it was confusing because I had made a bunch of batches of the same thing before. I went over to look at it, made sure it vented, and felt the lid. It was hard to open, but I figured because it said it had no pressure that it would be ok to open. That was really a bad idea on my part.....the lid flew off and broth went everywhere. Thankfully my mother-

10

in-law was there to help me and only part of me that was burned was my right arm.

p.      **September 20, 2017**, from a user of an Instant Pot® DUO60, manufactured in August of 2015, Serial Number 150860.20256:

> We used our pressure cooker to make Instant Pot® ® sauce yesterday.  The pressure was released, and my husband opened the lid.  The pressure apparently was not released, and the lid exploded off and hot Instant Pot® ® sauce severally burned my husband's [sic] face and arms, my grandsons [sic] face, and my shoulder and neck.  Can you please explain how this could have happened?  We turned the release pressure button on the top of the machine.

2.   **Instant Brand's 2017 New Locking Pin Assembly**

34.     Sometime before October 26, 2017, an Electric Pressure Cooker, Model IP-DUO60 V2.1, with what was called a "new construction of Locking Pin Assembly," was submitted by the manufacturer to Underwriters Laboratories [UL] for examination and testing.

35.     On or around October 26, 2017, pursuant to UL Standard 136, UL conducted Cover Opening and Locking Mechanism Operation tests of an Electric Pressure Cooker, Model IP-DUO60 V2.1, with the "new construction of Locking Pin Assembly."

36.     On or around October 26, 2017, after conducting Cover Opening and Locking Mechanism Operation tests of an Electric Pressure Cooker, Model IP-DUO60 V2.1, with the new construction of Locking Pin Assembly, UL issued a "New" certification of the UL listing for the DUO60 V2.1, and some other Instant Pot® pressure cooker products.

37.     Upon information and belief, Insta Brands designed or caused to be designed the "new construction of Locking Pin Assembly" because Insta Brands was aware of the Defect.

38.     Upon information and belief, Instant Brands continued to manufacture the Instant Pot® Products without using the new Locking Pin Assembly and may not ever have used the new Locking Pin Assembly.

3. **Continued Notice of Defect**

39.     Upon information and belief, in 2018, Instant Brands continued to receive notice from users of its Instant Pot® Products that the lid of the Product had opened while the contents of the cooker were under pressure, the super-heated contents of the Product erupted from the pot, and caused serious burn injuries to the user of the Product.

40.     On information and belief, in 2019, Instant Brands continued to receive notice from users of its Instant Pot® Products that the lid of the Product had opened while the contents of the cooker were under pressure, causing the super-heated contents of the Product to erupt from the pot and cause serious burn injuries to the user of the Product.

41.     On information and belief, in 2020 Instant Brands continued to receive notice from users of its Instant Pot® Products that the lid of the Product had opened while the contents of the cooker were under pressure, causing the super-heated contents of the Product to erupt from the pot and cause serious burn injuries to the user of the Product.

42.     In December of 2020, Defendant Instant Brands knew, or should have known, that on November 24, 2020, the United States Consumer Product Safety Commission published a recall by one of Instant Brands' Competitors, Sunbeam, its Crockpot Pressure a pressure cooker, a product substantially similar to the Instant Pot® Products at issue here, that allegedly had a defect that cause the lid to suddenly detach while the product is in use, posing burn risks to consumers from hot food and liquids ejected from the product.

43.     On information and belief, in 2021, Instant Brands continued to receive notice from users of its Instant Pot® Products that the lid of the Product had opened while the contents of the cooker were under pressure, causing the super-heated contents of the Product to erupt from the pot and cause serious burn injuries to the user of the Product.

44.     Defendant Instant Brands has not disclosed the Defect or issued pre- or post-sale

warnings to consumers or purchasers that the lid of some of the Instant Pot® Products have been reported to open while the contents were under pressure.

45.     Defendant Instant Brands has not recalled any Instant Pot® Product in order to eliminate the risk that the lid may be opened by users while the contents are under pressure.

46.     Defendant Instant Brands has not offered to any consumers the option to exchange the lid of their product for a lid that includes "new construction of Locking Pin Assembly."

47.     Defendant Instant Brands has not offered to any consumers the option to exchange their Product for one free from the Defect.

4.   **Notice of Lawsuit for Product with Substantially Similar Lid**

48.     In May 2016, Defendant Instant Brands knew, or should have known, that one of its competitors, Tristar Products, Inc. ("Tristar"), which made a pressure cooker substantially similar to the Instant Pot Product at issue here, was sued in the U.S. District Court for the Northern District of Ohio[2] where the plaintiffs alleged that certain pressure cookers made by Tristar had a defect that allowed users to open the pressure cookers' lids even though built-up pressure remained inside the pressure cooker.

49.     In May 2017, Defendant Instant Brands knew, or should have known, that on April 24, 2017, the U.S. District Court in the Norther District of Ohio had granted class certification in the civil action against Tristar of claims regarding allegations that the pressure cooker substantially similar to the Instant Pot Product at issue here, had a defect that allowed users to open the pressure cookers' lids even though built-up pressure remained inside the pressure cooker.

50.     In August of 2018, Defendant Instant Brands knew, or should have known, that on August 3, 2018, the U.S. District Court in the Norther District of Ohio had approved a class action

---

[2] *Chapman, et al. v. Tristar Products Inc.*, Case No. 1:16-cv-01114, N.D. Ohio, filed May 10, 2016.

13

settlement of a civil action against one of its competitors, Tristar Products, Inc. ("Tristar"), which made a pressure cooker substantially similar to the Instant Pot Product in issue here, that allegedly had a defect that allowed users to open the pressure cookers' lids even though built-up pressure remained inside the pressure cooker.

51.     Defendant had a duty to Plaintiffs and Class Members to disclose the defective nature of the Product because:

> (a) Defendant was in a superior position to know the true state of facts about the safety defect contained in the Product;
>
> (b) The omitted facts were material because they directly impact the safety of the Product;
>
> (c) Defendant knew the omitted facts regarding the Defect were not known to or reasonably discoverable by Plaintiffs and Class Members;
>
> (d) Defendant made partial disclosures about the quality of the Product without revealing the true defective nature; and,
>
> (e) Defendant actively concealed the defective nature of the Product from Plaintiffs and Class Members.

52.     Defendant had a duty to ensure that the Product was safe and that its lids did not suffer from the Defect because Defect directly impacts the safety of the Product.

**C.  Defendant's Marketing of the Instant Pot®**

53.     Defendant represented that the Instant Pot® had safety features such that the lid cannot be opened while contents of the pot are under pressure. However, Upon information and belief, the intended safety feature of the Instant Pot® (that the lid cannot be opened while contents of the pot are under pressure) was not adequately tested in design and development of the product to ensure that it was failsafe under the conditions of reasonably expected use.

14

54.     Defendant marketed the Instant Pot® with the following claims and representations:

(a)     These claims appeared on the box in which the Product was delivered to each of the Plaintiffs:

"As a safety feature, until the float valve drops down, the lid is locked and cannot be opened."

"Safe, Convenient and Dependable!"

"10 Proven Safety Mechanisms,"

"Pressure Regulator Protection,"

"Leaky Lid Protection" (collectively, the "Packaging Representations").

(b)     These claims appear in the User Manual[3] on pages 8 and 22:

"[The Instant Pot®] . . . protects you with 10 proven safety mechanisms and patented technologies."

"As a safety feature, until the float valve drops down, the lid is locked and cannot be opened."

(c)     This claim appears on YouTube:[4]

"You can use your Instant Pot® with confidence, knowing that it is not going to explode."

(d)     These claims and representations appear on Defendant's web site for the DUO line:[5]

"Instant Pot® is carefully designed to eliminate many common errors that may cause harm or spoil food."

"[The Instant Pot® ] passed the stringent UL certification giving you uncompromised safety and peace of mind . . . ."

[The Instant Pot®] . . . protects you with 10 proven safety mechanisms and patented technologies."

"Instant Pot® Duo is a smart Electric Pressure Cooker designed to be Safe, Convenient and Dependable."

---

[3] https://instantpot.com/wp-content/uploads/2017/ 07/DUO-Series-Manual-English-January-24-2018-web.pdf (last accessed September 9, 2021).

[4] https://www.youtube.com/watch?v=w1RKj9E8TY0 (last accessed September 12, 2021).

[5] https://instantpot.com/portfolio-item/duo-6-quart/ (last accessed September 9, 2021).

"These greatly improve cooking result and maintain consistence. Instant Pot® is carefully designed to eliminate many common errors that may cause harm or spoil food. It passed the stringent UL certification giving you uncompromised safety and peace of mind and protects you with 10 proven safety mechanisms and patented technologies."

"Instant Pot® Duo uses the latest 3rd generation technology with an embedded microprocessor, which monitors the pressure and temperature, keeps time and adjusts heating intensity. 3 temperatures in 'Sauté' for searing, simmering or thickening and 3 temperatures in 'Slow Cook' to provide greater flexibility."

(e)     These claims and representations appear on Defendant's web site for all of the Instant Pot® pressure cookers:[6]

"With the steam release open, pressure never builds up in the cooking pot."

"All Instant Pot® models are 3rd Generation electric pressure cookers."

"3rd Generation Electric Pressure Cookers are Equipped with Smart Programming and Enhanced Safety."

"With the microprocessor programs, more sophisticated safety mechanisms become possible. For instance, one common mistake is misplacing the stream release at the open position while starting cooking. With the steam release open, pressure never builds up in the cooking pot."

"With the advance in pressure and temperature sensor accuracy, the 3rd Generation electric pressure cookers implement sophisticate control with digital technology. Two most remarkable features are Smart Programming and Enhanced Safety. These features greatly improve cooking result, maintain consistence and enhance safety."

55.     Plaintiffs and Class Members were exposed to Instant Brand's omission about the Product before and immediately after purchase and within the time period in which they could have returned their Instant Pot® without penalty.

56.     Each Plaintiff saw the external packaging – which Instant Brands developed – before purchasing or using the Product and or before they could have returned their Instant Pot®

---

[6] https://Instant Pot®.com/portfolio-item/three-generations-of-electric-pressure-cookers/ (last accessed September 9, 2021).

without penalty.

57.     Upon information and belief, each Class Member saw the external packaging – which Instant Brands developed – before purchasing or using the Product and or before they could have returned their Instant Pot® without penalty.

58.     None of the informational sources Plaintiffs encountered – advertisements, websites, external packaging – disclosed that the Instant Pot® is defective.

59.     Upon information and belief, Insta Brands was aware that consumers not only prefer but require the pressure cookers that they purchase to be safe for their reasonably expected and intended use.

60.     Upon information and belief, Insta Brands intentionally omitted revealing the Defect in order to give consumers a false sense of safety and to ensure that consumers purchased the Products.

**D.  Instant Brands' Inadequate Quality Assurance Inspection and Testing**

61.     The design and performance of the Instant Pot® is subject to certain industry standards, including but not limited to Underwriters Laboratories [UL] Standard 136 (8th Edition), Standard for Pressure Cookers; American Society for Testing and Materials [ASTM], ASTM F1217 - 17, Standard Specification for Cooker, Steam; and American National Standards Institute [ANSI].

62.     UL 136 Standard for Safety, Pressure Cookers, requires, in part, that when a pressure cooker vessel is under pressure the cover (or lid) should not be able to be opened by applying a force of 100 pounds (445 N), with the force to be applied gradually.

63.     Defendant Instant Brands has a duty to ensure that, when the Product is under pressure, the cover (or lid) cannot be opened by applying a force of 100 pounds (445 N) or less, with the force applied gradually.

64. Pursuant to applicable industry standards, a pressure cooker sold for consumer use should not be designed or constructed in such a way that the lid can be opened by the consumer when the contents of the pot are still under pressure, without the use of a force in excess of 100 pounds.

65. Defendant Instant Brands has a duty to comply with industry standards and to ensure that the Product is not designed or constructed in such a way that the lid can be opened by the user when the contents of the pot are still under pressure, without the use of a force in excess of 100 pounds.

66. It is the standard in the industry, and the duty of any entity importing products, or having products made for it by a third party, to do quality assurance inspection and testing to assure that the products that are being provided to it conform with the design and quality specifications of the entity for whom the products were made.

67. The purpose of quality assurance inspection and testing prior to accepting delivery of any products delivered from a third party is to assure that the products that are being provided conform with the design and quality specifications of the entity for whom the product was made.

68. Defendant Instant Brands had a duty to do quality assurance inspection and testing regarding the design and performance of the Instant Pot® products.

69. Upon information and belief, Defendant Instant Brands did not do adequate quality assurance inspection and testing regarding the design and performance of the Instant Pot® products.

70. Defendant Instant Brands had a duty to do quality assurance inspection and testing prior to accepting delivery of Instant Pot® products from Guangdong Midea Consumer Electric Manufacturing Co Ltd. that were intended to be sold in the United States.

71. Upon information and belief, Defendant Instant Brands did not do adequate quality

18

assurance inspection and testing prior to accepting delivery of Instant Pot® products from Guangdong Midea Consumer Electric Manufacturing Co Ltd. that were intended to be sold and distributed in the United States.

### E. Plaintiffs' Instant Pot® Purchases

#### 1. **Plaintiff Michelle Havens**

72.     Plaintiff Michelle Havens purchased her Instant Pot® Product in or around December 2018.

73.     Without any knowledge of the Defect, in or around December 2018, Plaintiff Havens made a trip to Kohls located on Rosedale Highway in Bakersfield, California in search of a pressure cooker. When she arrived at Kohls during the holiday season, she was greeted by a large display of various pressure cookers. Plaintiff Havens settled on the Instant Pot® IP-DUO60 V3 after viewing the packaging, the Packaging Representations, and seeing no mention of any defect, deciding that that model best suited her needs.

74.     Shortly before filing the present complaint, Plaintiff Havens became aware of Defendant's failures as they pertain to the Defect after speaking with counsel. After learning of the Defect and the serious safety concerns, Plaintiff Havens became fearful of using her Instant Pot® Product and so she discontinued using it. Plaintiff Havens feels safer now that her Instant Pot® Product is stored out of reach outside of her home and is no longer used.

75.     Plaintiff Havens was never informed by Instant Brands, or by any other agent of Instant Brands, that the Havens Product suffered from the lid Defect. Instant Brand's omissions were material to Plaintiff Havens. Had Instant Brands or its agents disclosed its knowledge of the Defect before Plaintiff Havens purchased the Havens Product, Plaintiff Havens would have seen and been aware of the disclosures. Moreover, Plaintiff Havens would not have purchased the Havens Product or would have returned it.

2. **Plaintiff Elsie Wilkerson**

76.     Plaintiff Elsie Wilkerson purchased her Instant Pot® Product on or about the winter of 2018.

77.     On or about the winter of 2018, without any knowledge of the Defect, Plaintiff Wilkerson visited the QVC Outlet store in Brandon, Florida to purchase a pressure cooker. The QVC Outlet store had a large display with numerous pressure cookers to choose from. Plaintiff Wilkerson examined the boxes of various models and chose the Instant Pot® Six Quart Viva Cobalt 60—after viewing the packaging, the Packaging Representations, and seeing no mention of any defect—as that model best suited her needs. Plaintiff Wilkerson trusted that Defendant would provide her a safe and reliable Instant Pot®.

78.     Shortly before filing the present complaint, Plaintiff Wilkerson became aware of Defendant's failures as they pertain to the Defect after speaking with counsel. After learning of the Defect, Plaintiff Wilkerson became fearful of using the Instant Pot® due to serious safety concerns and has since discontinued using her Instant Pot®.

79.     The Wilkerson Product bears an Underwriters Laboratories Listed mark. Upon information and belief, her Instant Pot® was manufactured in 2018.

80.     Plaintiff Wilkerson was never informed by Instant Brands, or by any other agent of Instant Brands, that the Instant Pot® suffered from the lid defect. Instant Brand's omissions of the Defect were material to Plaintiff Wilkerson. Had Instant Brands or its agents disclosed their knowledge of the Defect before Plaintiff Wilkerson purchased her Instant Pot®, Plaintiff Wilkerson would have seen and been aware of the disclosures. Moreover, Plaintiff Wilkerson would not have purchased the Instant Pot® or would have returned it.

## CLASS ALLEGATIONS

81.     Plaintiffs bring this action against Defendant individually and as a class action

20

pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of: all persons in the United States who purchased and own an Instant Pot® after September 27, 2013 (the "Nationwide Class"). The Instant Pot® pressure cookers include:

      a.    IP DUO Series;

      b.    Lux Series;

      c.    Viva Series;

      d.    Duo Plus Series;

      e.    Duo Evo Plus;

      f.    Duo Crisp;

      g.    Duo Nova Series;

      h.    Nova Plus Series;

      i.    SmartSeries;

      j.    DUO SV;

      k.    Ultra Series; and

      l.    Max Series.

82.    Plaintiff Michelle Havens further brings this action on behalf of: all persons who reside in California and who purchased after September 27, 2013 and own an Instant Pot® (the "California Subclass").

83.    Plaintiff Elsie Wilkerson further brings this action on behalf of: all persons who reside in Florida, who purchased after September 27, 2013 and own an Instant Pot® (the "Florida Subclass").

84.    The Nationwide Class, California Subclass, and Florida Subclass are collectively referred to here as the "Class" or "Classes." Excluded from the Classes are: (a) any Judge or court personnel assigned to this case and members of their immediate families; and (b) Defendant, any

parent, affiliate, or subsidiary of Defendant, any entity in which any Defendant has a controlling interest, any of Defendant's officers or directors, and any successor or assign of Defendant.

85. <u>Numerosity</u>: The members of each Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, each Class consists of hundreds of thousands of people. The exact number of Class Members can be determined by Defendant's sales information and other records.

86. <u>Commonality</u>: Common questions of law and fact exist as to all members of each Class, including, without limitation:

    a.  Whether the Instant Pot® designed and sold by Defendant possesses a material defect;

    b.  Whether the Defect creates an unreasonable risk that the lid of the Instant Pot® can be opened by the user/consumer applying less than 100 pounds of rotational force, applied gradually, while its contents are under pressure, resulting in its super-heated contents erupting from the pot and causing serious inures by scalding the use/consumer, and others nearby;

    c.  Whether the Defect creates an unreasonable risk that the lid of the Instant Pot® may open spontaneously while its contents are under pressure, resulting in its super-heated contents erupting from the pot and causing serious inures by scalding the use/consumer, and others nearby;

    d.  Whether Defendant knew or should have known that the Instant Pot® possessed the Defect at the time of sale;

    e.  Whether Defendant omitted to disclose the Defect;

    f.  Whether Defendant concealed the Defect, once it knew of the defect;

    g.  Whether Defendant breached express warranties relating to the Instant Pot®;

h. Whether Defendant breached implied warranties of merchantability relating to the Instant Pot®;

i. Whether Defendant violated the Magnusson-Moss Warranty Act;

j. Whether Defendant breached consumer protection statutes of California and Florida;

k. Whether Plaintiffs and Class Members are entitled to damages;

l. Whether Plaintiffs and Class Members are entitled to replacement or repair of their defective Instant Pot®;

m. Whether Plaintiffs and Class Members are entitled to restitution of the purchase price they paid for their defective Instant Pot®; and

n. Whether Plaintiffs and Class Members are entitled to other equitable relief, including an injunction requiring that Defendant engage in a corrective notice campaign and/or a recall.

87. <u>Typicality</u>: Plaintiffs have the same interest in this matter as all Class Members, and Plaintiffs' claims arise out of the same set of facts and conduct by Defendant as the claims of all Class Members. Plaintiffs' and Class Members' claims all arise out of Defendant's sale of the defective Instant Pot® that has created a significant safety risk to consumers, and from Defendant's failure to disclose the Defect.

88. <u>Adequacy of Representation</u>: Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in consumer and product liability class action litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of the Class Members.

89. <u>Injunctive/Declaratory Relief</u>: The elements of Rule 23(b)(2) are met. Defendant is continuing to commit the unlawful practices alleged here, and Class Members will remain at an

unreasonable and serious safety risk as a result of the Defect. Defendant has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate for the Class as a whole.

90.    Predominance: The elements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual Class Members, and a class action is the superior method for the fair and efficient adjudication of this controversy. The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is not efficient, timely, or proper. Judicial resources will be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of hundreds or thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly situated Plaintiffs.

## TOLLING OF THE STATUTES OF LIMITATIONS

91.    Defendant knew or reasonably should have known that the Product was defective before its sale. Defendant intentionally concealed material truths and disclosed half-truths while at the same time concealing material information that would have corrected consumers' perceptions concerning the Product from the general public and Class Members, while continuing to falsely represent that the Product is safe and fit for its intended use.

92.    Defendant affirmatively represented to the general public, among other things, that the Product was safe, and that the lid would not come off when the contents were under pressure. Through these representations, Defendant created a reasonable expectation among ordinary consumers that the product was safe to use for its intended purpose.

93.    Based upon Defendant's misrepresentations and concealment, Defendant is equitably estopped from asserting a statute-of-limitations defense.

24

94.    Plaintiffs and the Class Members could not have reasonably discovered the Defect and that it was wrongfully caused by Defendant until shortly before the filing of this Complaint. As a result of Defendant's active and continuing concealment of the Defect and/or failure to inform Plaintiffs and the Class of the Defect, any and all statutes of limitations otherwise applicable to the allegations here have been tolled.

95.    In fact, prior to the purchase of the Instant Pot® Products, Plaintiffs had neither knowledge nor notice that there was any defect in the design, manufacture or labeling of the Instant Pot®.

96.    The claims alleged here accrued upon the discovery of the Defect and that it was wrongfully caused by Defendant. Because the Defect is hidden and Defendant failed to disclose the true character, nature, and quality of the Instant Pot®, Plaintiffs and Class Members did not discover, and could not have discovered, the Defect through reasonable and diligent investigation. Thus, any applicable statutes of limitations have been tolled by Defendant's knowledge, misrepresentation, and/or concealment and denial of the facts as alleged here.

**FIRST CLAIM FOR RELIEF**
**Breach of Express Warranty**
**(On behalf of the Nationwide Class, or alternatively,**
**the California and Florida Subclasses)**

97.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 97 as if fully set forth herein.

98.    In connection with its sale of the Instant Pot®, Defendant expressly provided a One (1) Year Limited Warranty ("Warranty") that it was free from defects in materials and workmanship. Upon information and belief, each Instant Pot® has an identical or substantially identical Warranty. A copy of the Warranty is attached as **Exhibit A** to this Complaint.]

99.    The Instant Pot® is defectively designed as a whole unit and is covered by

25

Defendant's Warranty.

100. Plaintiffs and the Class have privity of contract with Defendant through their purchase of the Instant Pot® from an authorized retailer as stated in the written Warranty that accompanied the purchase and expressly applies to purchasers of the Instant Pot®.

101. The express written Warranty covering the Instant Pot® was a material part of the bargain between Defendant and consumers. At the time it made this express Warranty, Defendant knew of the purpose for which the Instant Pot® was to be used and designed and intended it to be used for that specific purpose.

102. Defendant breached its express Warranty by selling an Instant Pot® that was not free of defects, not made for years of safe and dependable operation, not made from merchantable material and workmanship, and could not be used for the ordinary purpose of preparing meals at home. Defendant breached its express written Warranty to Plaintiffs and Class Members in that the Instant Pot® is defective when made, and thus contains the Defect on the very first day of purchase, creating a serious safety risk to Plaintiffs and Class Members.

103. The Instant Pot® that each Plaintiff purchased was subject to the Defect and caused each of them injury because they would not have purchased the Product had they known of the Defect.

104. Defendant expressly warranted in writing that it would repair or replace any defect in the Instant Pot® or refund the purchase price of the Instant Pot® if repair or replacement is not feasible.

105. Defendant breached the Warranty to repair or replace the defective Instant Pot® when it failed to do so despite its knowledge of the Defect, and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing the Instant Pot®.

106. Upon information and belief, Defendant received notice and has known of the

Defect since at least 2016 through customer warranty claims reporting problems with the Instant Pot®, customer complaints, and its own internal and external testing.

107.     Despite having notice and knowledge of the Defect, Defendant failed to provide an Instant Pot® to each Plaintiff and Class Member that did not have the Defect, failed to provide free repairs of the defective Instant Pot®, and failed to provide any form of compensation for the damages resulting from the Defect.

108.     As a result of Defendant's breach of its express written Warranty, Plaintiffs and Class Members have suffered damages.

**SECOND CLAIM FOR RELIEF**
**Breach of Implied Warranty of Merchantability**
**(On behalf of the Nationwide Class, or alternatively,**
**the California and Florida Subclasses)**

109.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 97 as if fully set forth herein.

110.     The Instant Pot® purchased by Plaintiffs and Class Members was defectively designed and manufactured and posed a serious and immediate safety risk to consumers and the general public.

111.     All of the Instant Pots® sold by Defendant left Defendant's facilities and control with the Defect that was caused by a defective design incorporated into the manufacture of the Instant Pot®.

112.     The Defect places Plaintiffs and Class Members at a serious safety and property damage risk upon using the Instant Pot® in their homes.

113.     The law imposes a duty requiring manufacturers or sellers of a product to ensure that the product is merchantable and reasonably fit for the ordinary purposes for which such a product is used, and that the product is acceptable in trade for the product description. This

implied warranty of merchantability is part of the basis of the bargain between Defendant and purchasers, including Plaintiffs and the Class Members.

114. Defendant breached the implied warranty of merchantability because the Instant Pot® is defective and poses a serious safety risk, was not fit for the ordinary purposes for which it was used, would not pass without objection, and failed to conform to the standard performance of like products. This Defect is substantially certain to manifest during the reasonable expected life of the product in any product that does not have the new locking lid assembly.

115. Defendant knew, or should have known, that the Instant Pot® posed a safety risk and was defective, and that it breached the implied warranties at the time it sold the Instant Pot® to Plaintiffs and Class Members or otherwise placed them into the stream of commerce.

116. As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiffs and Class Members bought the Instant Pot® without knowledge of the Defect or the serious safety risk.

117. As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiffs and Class Members purchased unsafe and defective Instant Pots® that were not fit to be used for their intended purpose of preparing food in a residential setting.

118. As alleged in detail above, Defendant received notice of the Defect and of its breaches of express and implied warranties through customer warranty claims reporting problems with the Instant Pot®, customer complaints, and its own testing.

119. Despite having notice and knowledge of the Defect, Defendant failed to provide a Defect-free Instant Pot® to Plaintiffs and Class Members, failed to provide free repairs of the defective Instant Pot®, and failed to provide any form of compensation for the damages resulting from the Defect.

120. Any attempt by Defendant to disclaim the implied warranty was improper,

insufficient, and of no effect.

121.    As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiffs and Class Members have suffered damages.

**THIRD CLAIM FOR RELIEF**
**Violation of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301 *et seq.***
**(On behalf of the Nationwide Class, or alternatively,**
**the California and Florida Subclasses)**

122.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 97 as if fully set forth herein.

123.    Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. section 2301 *et seq.* in response to widespread consumer complaints regarding misleading and deceptive warranties. The Act imposes civil liability on any "warrant" for failing to comply with any obligation under written and implied warranties. 15 U.S.C. § 2310(d)(1).

124.    The Product is a "consumer product" as that term is defined by 15 U.S.C. § 2301(1).

125.    Plaintiffs and the Class Members are "consumers" as that term is defined by 15 U.S.C. section 2301(3).

126.    Instant Brands is a "supplier" as that term is defined by 15 U.S.C. section 2301(4).

127.    Instant Brands is a "warrantor" as that term is defined by 15 U.S.C. section 2301(5).

128.    Instant Brands has failed to remedy the Defect, despite its knowledge and notice of the Defect in the Instant Pot®.

129.    Instant Brands expressly warranted the Product would be free of defects.

130.    At the time Instant Brand issued written Warranties for the Instant Pot®, it knew that the Product had the propensity to prematurely fail and posed an unreasonable safety hazard because of the Defect. Instant Brands' continued misrepresentations and omissions concerning the Defect, as well as Instant Brands' failure to abide by its own written and implied warranties, are

29

"unfair methods of competition in or affecting commerce, and [are] unfair or deceptive acts or practices in or affecting commerce." Accordingly, Instant Brands' behavior is unlawful under 15 U.S.C. sections 2310(b).

131.    Instant Brands provided Plaintiffs and Class Members with "written warranties" as that term is defined by 15 U.S.C. section 2301(6).

132.    A consumer who is damaged by the failure of the supplier, warrantor, or service contractor to comply with any obligation under this title, or a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief in any court of competent jurisdiction in any state. 15 U.S.C. § 2310(d)(1).

133.    When Plaintiffs and the Class Members purchased their Product, Instant Brands expressly warranted that it would cover repairs arising out of defects in materials and workmanship, as well as manufacture, without cost to the consumer for one year after purchase.

134.    Plaintiffs and Class Members used the Product in a manner consistent with its intended use and performed each and every duty required under the terms of the Warranty.

135.    Plaintiffs and the Class Members seek to recover damages caused as a direct result of Instant Brands' breach of its written and implied warranties and its unlawful conduct. Damages include the purchase price and/or costs associated with repairing or replacing the Products with non-defective products.

136.    Suppliers who offer a written warranty on a consumer product are prohibited from disclaiming or modifying implied warranties. 15 U.S.C. § 2308(a). The duration of an implied warranty may only be restricted to the duration of a limited written warranty of reasonable duration. 15 U.S.C. § 2308(b). Instant Brands' Warranty provides a warranty period of one-year, so, under the Magnuson-Moss Warranty Act, Instant Brands cannot disclaim implied warranties with respect to Product failures that occurred within the one-year period offered in Instant Brands'

Warranty.

137.    Instant Brands' attempt to disclaim implied warranties for failures caused by the Defect that occurred within the duration of the Warranty is null and void as a violation of the Magnuson Moss Warranty Act.

138.    All jurisdictional prerequisites have been satisfied.

139.    Under 15 U.S.C. section 2310, on their own behalf and on behalf of the Class, Plaintiff Havens sent notice of Havens sent notices of violations of the Magnuson-Moss Warranty Act to Instant Brands on September 13, 2021. Plaintiff Wilkerson sent similar notice on September 17, 2021.

140.    Plaintiffs' Magnuson-Moss Warranty Act notices were sent via certified mail, return receipt requested, to Instant Brands' principal place of business, advising Instant Brands that it is in violation of the Magnuson-Moss Warranty Act and that Plaintiffs are acting on behalf of a class, and affording Instant Brands a reasonable opportunity to cure its failure to comply.

141.    Plaintiffs were injured by Instant Brands' Magnuson-Moss Warranty Act violations. Accordingly, Plaintiffs and the Class Members suffered damages caused by Instant Brands' breach of express and implied warranties and are entitled to recover damages, including, but not limited to, restitution, equitable relief, and attorneys' fees and costs pursuant to 15 U.S.C. section 2310.

**FOURTH CLAIM FOR RELIEF**
**Fraud By Omission**
**(On behalf of the Nationwide Class, or alternatively,**
**the California and Florida Subclasses)**

142.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 97 as if fully set forth herein.

143.    Plaintiffs bring this claim on behalf of the Nationwide Class, or alternatively, the

law of the state in which each respective Plaintiff purchased an Instant Pot®.

144. Defendant knew that the Product suffered from the Defect, that it was defectively designed and/or manufactured, and was not suitable or safe for its intended use.

145. Defendant concealed from and failed to disclose to Plaintiffs and Class Members the defective nature of the Product.

146. Defendant had a duty to Plaintiffs and Class Members to disclose the defective nature of the Product because:

(a) Defendant was in a superior position to know the true state of facts about the safety defect contained in the Product;

(b) The omitted facts were material because they directly impact the safety of the Product;

(c) Defendant knew the omitted facts regarding the Defect were not known to or reasonably discoverable by Plaintiffs and Class Members;

(d) Defendant made partial disclosures about the quality of the Product without revealing the true defective nature; and,

(e) Defendant actively concealed the defective nature of the Product from Plaintiffs and Class Members.

147. Because the Defect in the Product is latent and unobservable until it arises, Plaintiffs and Class Members had no reasonable means of knowing that Instant Brands' representations concerning the Product were incomplete, false, misleading, or that it had failed to disclose that the Product was defective. Plaintiffs and Class Members did not discover, and reasonably could not have discovered, Instant Brands' deceit before they purchased the Product or before they could have returned their Instant Pot® without penalty.

148. Had Plaintiffs and Class Members known that the Product is defective, they would

not have purchased the Product.

149.    Defendant had a duty to disclose the Defect because the Defect results in a material and unreasonable safety hazard and Defendant possessed exclusive knowledge of it.

150.    Defendant had a duty to disclose the Defect because of its knowledge of the Defect and its advertising statements alleged above.

151.    Plaintiffs and Class Members were exposed to Instant Brand's omission about the Product before and immediately after purchase and within the time period in which they could have returned their Instant Pot® without penalty. Each Plaintiff also saw the external packaging – which Instant Brands developed – before purchasing or using the Product and or before they could have returned their Instant Pot® without penalty. None of the informational sources Plaintiffs encountered – advertisements, websites, external packaging – disclosed that the Instant Pot® is defective.

152.    Defendant failed to disclose the defect to sell more of the Product, to obtain a premium price, to prevent damage to its brand, and to avoid the costs of developing a fix for the defect and repairs, replacements, and refunds under its Warranty.

153.    The facts about the Product that Defendant suppressed and omitted were material, and Plaintiffs and Class Members were unaware of them when they purchased the Product. Had Instant Brands disclosed the Defect, including through advertising and the Product packaging, Plaintiffs and Class Members would not have purchased the Product.

154.    When deciding to purchase an Instant Pot®, Plaintiffs and Class Members reasonably relied to their detriment upon Defendant's material omissions regarding the quality of the Product, the safety of the Product, and the absence of a product defect.

155.    Plaintiffs and Class Members sustained damages as a direct and proximate result of Defendant's fraudulent omission.

156.     Defendant's fraudulent omission was malicious, oppressive, deliberate, intended to defraud Plaintiffs and Class Members and enrich Defendant, and in reckless disregard of Plaintiffs' and Class Members' rights, interests, and well-being. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct, to be determined according to proof.

### FIFTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(On behalf of the Nationwide Class, or alternatively,**
**the California and Florida Subclasses)**

157.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 97 as if fully set forth herein.

158.     Plaintiffs and the Class have conferred an unwarranted benefit on Defendant and all revenue collected from the sale of the Product rightfully belong to Class Members and represents an unwarranted benefit conferred upon Defendant by the Class.

159.     Under principles of equity and good conscience, Defendant should not be permitted to retain the benefits it gained through its actions.

160.     Plaintiffs and the Class Members have suffered loss as a direct result of Defendant's conduct.

161.     Among other remedies, Plaintiffs, on their own behalf and on behalf of the Class Members, seek the imposition of a constructive trust and restitution of proceeds Defendant received as a result of the conduct described in this complaint, as well as an award of attorneys' fees, costs, and interest.

### SIXTH CLAIM FOR RELIEF
**Violations of the Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL")**
**(On behalf of the California Subclass)**

162.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1

34

through 97 as if fully set forth herein.

163.   Plaintiff Havens asserts this claim on behalf of the California Subclass.

164.   Defendant is a "business" as defined by Cal. Bus. & Prof. Code section 17200.

165.   The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

**Unlawful**

166.   Defendant's conduct is unlawful, in violation of the UCL, because it violates the California Consumers Legal Remedies Act and the Song-Beverly Consumer Warranty Act and the common law of warranty and fraud.

**Unfair**

167.   Defendant's conduct is unfair in violation of the UCL because it violates California public policy, legislatively declared in the Song-Beverly Consumer Warranty Act, that requires a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes. Defendant violated the Song-Beverly Act because the Instant Pot® contains a material and unreasonable safety hazard.

168.   Defendant acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner by selling the defective and unsafe Product to consumers. Defendant engaged in unfair business practices and acts in at least the following respects:

> (a) Defendant promoted and sold a product it knew was defective because it contains a Defect that constitutes a material and unreasonable safety hazard to consumers;

> (b) Defendant promoted and sold its Product with the Defect despite knowing that users do not expect the Products to be a material and unreasonable safety hazard; and

> (c) Defendant failed to disclose that the Products are defective, and represented through advertising, its website, product packaging, and other sources that the

Products possess particular qualities that were inconsistent with Defendant's actual knowledge of the product.

169.    The gravity of harm resulting from Defendant's unfair conduct outweighs any potential utility.

170.    The harm from Defendant's conduct was not reasonably avoidable by consumers.

**Fraudulent**

171.    Defendant's conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer.

172.    Defendant was under a duty to disclose the omitted information because:

(a) Defendant was in a superior position to know the true state of facts about the safety Defect contained in the Product;

(b) The omitted facts were material because they directly impact the safety of the Product;

(c) Defendant knew the omitted facts regarding the Defect were not known to or reasonably discoverable by Plaintiffs and Class Members;

(d) Defendant made partial disclosures about the quality of the Product without revealing the true defective nature; and,

(e) Defendant actively concealed the defective nature of the Product from Plaintiffs and Class Members.

173.    Plaintiffs and Class Members suffered injury in fact, including lost money or property, as a result of Defendant's unlawful, unfair, and fraudulent acts and omissions. Absent Defendant's unlawful, unfair and fraudulent conduct, Plaintiffs and Class Members would not have purchased a Product or would have returned their Product when they could have done so without penalty.

174. Plaintiffs and Class Members accordingly seek appropriate relief, including (1) restitution under the UCL; and (2) such orders or judgments as may be necessary to enjoin Instant Brands from continuing its unfair, unlawful, and fraudulent practices.

## SEVENTH CLAIM FOR RELIEF
### Violations Of The Consumers Legal Remedies Act,
### Cal. Civ. Code § 1750 *et seq.* ("CLRA")
### (On behalf of the California Subclass)

175. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 97 as if fully set forth herein.

176. Plaintiff Havens assert this claim on behalf of the California Subclass.

177. Defendant is a "person" within the meaning of California Civil Code sections 1761(c) and 1770, and provided "goods" within the meaning of sections 1761(a) and 1770.

178. Defendant has violated the Consumers Legal Remedies Act with the following actions:

    (a) Representing that the Product had characteristics, uses, and benefits it does not have in violation of Cal. Civ. Code section 1770(a)(5);

    (b) Represented that the Product is of a standard, quality, or grade when in fact it does not in violation of Cal. Civ. Code section 1770(a)(7); and

    (c) Advertised the Instant Pot® with intent not to sell it as advertised in violation of Cal. Civ. Code section 1770(a)(9).

179. Defendant's deceptive practices were specifically designed to induce Plaintiff and Class Members to purchase the Product. Defendant engaged in marketing efforts as detailed in the general allegations to reach Class Members and/or third parties on whom they relied to persuade Class Members to purchase the defective Product.

180. Defendant's misrepresentations and omissions were material. Had Plaintiff and

Class Members known that the Product is defective, they would not have purchased the Product or would have returned their Product when they could have done so without penalty.

181.     To this day, Defendant continues to engage in unlawful practices in violation of the CLRA. Defendant continues to conceal the defective nature of the Product and has omitted to disclose, on inquiry from Plaintiff and Class Members, the Product's defective propensities.

182.     Plaintiff sent a notice pursuant to Civil Code section 1782 on September 13, 2021 via certified mail, return receipt requested, to Instant Brands' principal place of business and Global Headquarters, 3025 Highland Parkway, Downers Grove, IL 605135, advising Defendant that it is in violation of CLRA and must correct, replace, or otherwise rectify the goods alleged to be in violation of California Civil Code section 1770. Defendant has failed to correct its business practices or provide the requested relief within 30 days of the notice. Thus, Plaintiff seeks monetary damages, reasonable attorneys' fees and costs, and punitive damages under the CLRA.

## EIGHTH CLAIM FOR RELIEF
### Violations of the Song-Beverly Consumer Warranty Act
### Cal. Civ. Code § 1792 *et seq.*
### (On behalf of the California Subclass)

183.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 97 as if fully set forth herein.

184.     Plaintiff Havens asserts this claim on behalf of the California Subclass.

185.     Plaintiffs Havens is a "buyer" within the meaning of California Civil Code section 1791(b). Plaintiffs Havens purchased the Product in California.

186.     Instant Brands is a manufacturer within the meaning of California Civil Code section 1791(j). Defendant was responsible for producing the Product and was involved in all stages of the production and manufacturing process.

187.     The Product is a "consumer good" within the meaning of California Civil Code

section 1791(a).

188.     Defendant impliedly warranted to Plaintiff Havens and the California Subclass that the Product each purchased was "merchantable" under California Civil Code sections 1791.1 and 1792.

189.     Defendant violated the implied warranty of merchantability by producing, manufacturing, and selling Products that were not of merchantable quality. The Product is defective and poses an unreasonable safety hazard. The Product is therefore unfit for the ordinary purposes for which the Product is intended and would not pass without objection in the trade.

190.     The defect in the Product is latent. The Defect existed in the product at the time of sale and throughout the one-year Warranty period. Accordingly, any subsequent discovery of the Defect beyond that time does not bar an implied warranty claim under the Song-Beverly Act.

191.     Any attempt by Defendant to disclaim its implied warranty obligations under the Song-Beverly Act is ineffective due to its failure to comply with California Civil Code section 1792.4(a) which requires that a disclaimer must be:

> [A] conspicuous writing [ ] attached to the goods which clearly informs the buyer, prior to the sale, in simple and concise language of each of the following:
> (1) The goods are being sold on an "as is" or "with all faults" basis.
> (2) The entire risk as to the quality and performance of the goods is with the buyer.
> (3) Should the goods prove defective following their purchase, the buyer and not the manufacturer, distributor, or retailer assumes the entire cost of all necessary servicing or repair.

192.     As a direct and proximate cause of Defendant's breaches of the Song-Beverly Consumer Warranty Act, Plaintiff Havens and the California Subclass have been damaged in an amount to be proven at trial.

### NINTH CLAIM FOR RELIEF
**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. § 501.201 *et seq.***
**(On Behalf of the Florida Subclass)**

193. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 97 as if fully set forth herein.

194. Plaintiff Wilkerson brings this claim on behalf of herself and the Florida Subclass.

195. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). Defendant engaged in unfair and deceptive practices that violated the FDUTPA as described above.

196. Defendant engaged in "trade or commerce" in Florida within the meaning of the FDUTPA. Fla. Stat. § 501.203(8).

197. In the course of its business, Defendant failed to disclose and actively concealed the Defect contained in the Instant Pot® Products and the corresponding dangers and risks posed by the Product as described above, and otherwise engaged in activities with a tendency or capacity to deceive.

198. In violation of the FDUTPA, Defendant employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentation, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Instant Pot® Products because Defendant knowingly concealed, suppressed, and omitted material facts regarding the Products that contain a material and unreasonable safety hazard.

199. Defendant acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner. Defendant engaged in unfair and deceptive business practices and acts in violation of the FDUTPA in at least the following respects:

      (a)    Defendant promoted and sold a product it knew was defective because it contains a Defect that constitutes a material and unreasonable safety hazard to consumers;

40

(b)     Defendant promoted and sold its Product with the Defect despite knowing that users do not expect the Product to have a material and unreasonable safety hazard; and

(c)     Defendant failed to disclose that the Product is defective, and represented through advertising, its website, product packaging, and other sources that the Product possessed particular qualities that were inconsistent with Defendant's actual knowledge of the Product.

200.    The gravity of harm resulting from Defendant's unfair and deceptive conduct outweighs any potential utility.

201.    The harm from Defendant's conduct was not reasonably avoidable by consumers.

202.    Defendant was under a duty to disclose the Defect because of its exclusive knowledge of the Defect before selling the Product, the Defect resulted in a material and unreasonable safety hazard, and because Defendant made partial representations about the Product without disclosing the Defect as alleged above.

203.    As a direct and proximate result of Defendants' violation of the FDUTPA, Plaintiff Wilkerson and the Class Members suffered injury in fact, including lost money or property, as a result of Defendant's unfair, deceptive and fraudulent acts and omissions. Absent Defendant's unfair, deceptive, and fraudulent conduct, Plaintiff Wilkerson and the Class Members would not have purchased the Product or would have returned their Product when they could have done so without penalty.

204.    Plaintiff Wilkerson and the Class Members accordingly seek appropriate relief, including recovery of (1) actual damages, under Fla. Stat. section 501.211(2), (2) attorneys' fees under Fla. Stat section 501.2105(1), and (3) such orders or judgments as may be necessary to enjoin Instant Brands from continuing its unfair, and deceptive practices.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Michelle Havens and Elsie Wilkerson, on behalf of themselves and the Class, respectfully request that this Court:

(a) Determine that the claims alleged here may maintained as a class action under Federal Rule of Civil Procedure 23, and enter an order certifying the Classes defined above and appointing Plaintiffs as Class representatives;

(b) Award all actual, general, special, incidental, statutory, punitive, and consequential damages and/or restitution to which Plaintiffs and Class Members are entitled;

(c) Award pre-judgment and post-judgment interest as provided by law;

(d) Grant appropriate equitable relief, including, without limitation, an order requiring Instant Brands to: (1) adequately disclose the defective nature of the Product; and (2) return to Plaintiffs and Class Members all costs attributable to remedying or replacing Instant Pot®, including but not limited to economic losses from the purchase of replacement Products;

(e) Award reasonable attorneys' fees and costs as permitted by law; and

(f) Grant such other and further relief as the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiffs hereby demands a jury trial for all individual and Class claims so triable.


Respectfully submitted,


Dated: June 2, 2022       By:      /s/Shannon M. McNulty

                 Shannon M. McNulty
                 SMM@cliffordlaw.com
                 CLIFFORD LAW OFFICES, P.C.
                 120 N. LaSalle Street, 31st Floor
                 Chicago, Illinois 60602
                 Telephone: 312.899.9090

Facsimile: 312.251.1160

Michael F. Ram
(To be admitted Pro Hac Vice )
mram@forthepeople.com
Marie N. Appel
(To be admitted Pro Hac Vice )
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

George E. McLaughlin
MCLAUGHLIN LAW FIRM, P.C.
1890 Gaylord St.
Denver, Illinois 80206
(720) 420-9800 (office)
(303) 506-0694 (cell)
gem@mcllf.com

*Attorneys for Plaintiffs and the Proposed Classes*